David B. Rosenbaum, 009819
Joshua J. Messer, 035101
OSBORN MALEDON, P.A.
2929 North Central Avenue, 21st Floor
Phoenix, Arizona 85012-2793
(602) 640-9000
drosenbaum@omlaw.com
jmesser@omlaw.com

*Additional Counsel Listed on Signature Page*

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Tohono O'odham Nation and Gila River Indian Community, | No. |
| Plaintiffs, | COMPLAINT |
| v. | |
| Mark Brnovich in his official capacity as Attorney General of Arizona; Katie Hobbs, in her official capacity as Arizona Secretary of State; Dana Lewis in her official capacity as Pinal County Recorder; Gabriella Cázares-Kelly in her official capacity as Pima County Recorder; Stephen Richer in his official capacity as Maricopa County Recorder, | |
| Defendants. | |

Plaintiffs Tohono O'odham Nation and Gila River Indian Community ("Tribes") bring this Complaint against Defendants Arizona Secretary of State Katie Hobbs, Arizona Attorney General Mark Brnovich, Pinal County Recorder Dana Lewis, Pima County Recorder Gabriella Cázares-Kelly, and Maricopa County Recorder Stephen Richer and allege as follows:

1

**INTRODUCTION**

1. Plaintiff Tribes bring this equitable action to challenge the documentary proof of location of residence requirement imposed by Arizona HB 2492. The challenged requirement (hereinafter "DPOR" or "Physical Address Requirement") will disenfranchise significant numbers of Native Americans by blocking Arizonans who reside in a dwelling that does not have a standard physical address assigned to it—a circumstance that is significantly disproportionately common for Native Americans across many areas of the state—from registering to vote in federal, state, and local elections.

2. Plaintiffs are imminently threatened with a concrete and particularized injury in fact that is fairly traceable to the challenged action of the Defendants. As a result of the Physical Address Requirement, people who live in housing that does not have a standard physical address will either be completely unable to register to vote, or will be unable to register to vote without overcoming the severe burden of both obtaining a standard street address for their home and having that address added to their identifying documents—a process that can take years, or even decades, and is largely out of the control of individual voters.

3. This DPOR requirement serves no governmental interest, let alone one sufficiently compelling to justify the severe burden that will be imposed on Native voters, and others in Arizona who lack standard addresses, if this provision is allowed to take effect. To the contrary, Arizona has for years implemented a successful voter registration and list maintenance program that allows voters who lack standard physical addresses to submit a description and/or graphic depiction of their location of residence, using either the state or federal voter registration form. The DPOR requirement thus constitutes a violation of the fundamental right to vote guaranteed by the First and Fourteenth Amendments to the United States Constitution for eligible voters who live in housing without a standard physical address.

4. By imposing an additional prerequisite to registering to vote in federal elections beyond what is required by the Federal Form developed by the United States Election Assistance Commission (EAC), the DPOR requirement also violates the federal National Voter Registration Act (NVRA), which provides that states must "accept and use" the federal voter registration form to register voters for federal elections. 52 U.S.C. § 20505. *See also Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1 (2013).

5. The concrete and particularized injuries with which Plaintiffs are imminently threatened are likely to be redressed by a favorable judicial decision. To remedy Defendants' violation of the NVRA, Plaintiffs seek declaratory relief and an injunction prohibiting Arizona from implementing the Physical Address Requirement for any and all voters who register to vote using the federal voter registration form. Further, to remedy Defendants' violation of the U.S. Constitution, Plaintiff Tohono O'odham Nation seeks declaratory relief and an injunction prohibiting Arizona from implementing the Physical Address Requirement as applied to any and all voters who lack a standard physical address and who register to vote using either the state or federal voter registration form.

**JURISDICTION AND VENUE**

6. This Court has original jurisdiction over this action under 28 U.S.C. §§ 1331, 1343(a)(3)-(4), 1362, 2201(a), and 2202, 42 U.S.C. § 1983, and 52 U.S.C. § 10308(f), and 52 U.S.C. § 20510(b).

7. Venue is proper in this Court under 28 U.S.C. §§ 82 and 1391(b).

**PARTIES**

*Plaintiffs*

8. Plaintiff Tohono O'odham Nation is a federally recognized Tribe with approximately 28,000 enrolled members. 87 Fed. Reg. 4636, 4639 (January 28, 2022). The legislative and executive powers of the Tohono O'odham Nation are vested in the Tohono O'odham Council and the Office of the Chairman, respectively. *Constitution*

*of the Tohono O'odham Nation*, art. V § 1 & art. VII § 1 (March 6, 1986). Among the enumerated powers of the Council and Chairman are the authority to promote, protect and provide for public health, peace, morals, education, and general welfare of the Tohono O'odham Nation and its members and to act as the official representative of the Tohono O'odham Nation. *Id.*, art. VI § (1)(c)(2) & art. VII § (2)(f).

9. Approximately, 6,713 voting age individuals live on Tohono O'odham lands. *2020 Census State Redistricting Data (Pub. L. No. 94-171) Summary File Prepared by the U.S. Census Bureau, 2021 as published by Caliper Corporation*. Many of those individuals are Tohono O'odham members who will be eligible to register to vote on January 1, 2023. A significant majority of Tohono O'odham members do not have a standard physical address and therefore will be unable to satisfy the DPOR requirement.

10. Plaintiff Tohono O'odham Nation brings this action parens patriae to protect Tohono O'odham members' general welfare, which includes the right to vote free from discrimination and undue burden, and to protect its place in the federal system through protection of its members voting rights.

11. Plaintiff Gila River Indian Community is a federally recognized Tribe with approximately 21,300 enrolled members. 87 Fed. Reg. 4636, 4638 (January 28, 2022). The Community is governed by the Gila River Community Council, which has among its enumerated powers the authority to promote and protect the health, peace, morals, education, and general welfare of the Community and its members and to act for and on behalf of those members. *Constitution and Bylaws of the Gila River Indian Community of Arizona*, art. XV, § 1(a)(9) (codified by Gila River Indian Community Council on July 7, 2021).

12. Approximately, 9,268 voting age individuals live on the Gila River Reservation. *2020 Census State Redistricting Data (Pub. L. No. 94-171) Summary File Prepared by the U.S. Census Bureau, 2021 as published by Caliper Corporation*. Many of those individuals are Gila River members who will be eligible to register to vote on

January 1, 2023. A significant number of Gila River members do not have a standard physical address and therefore will be unable to satisfy the DPOR requirement.

13. Plaintiff Gila River Indian Community brings this action parens patriae to protect Gila River members' general welfare, which includes the right to vote free from discrimination and undue burden, and to protect its place in the federal system through protection of its members' voting rights.

*Defendants*

14. Defendant Katie Hobbs, as Arizona's Secretary of State, serves as the chief state election officer for Arizona. A.R.S. § 16-142. The Secretary of State is a statewide elected public officer and is responsible for supervising voter registration throughout the state, including implementation of HB 2492 when it goes into effect. The Secretary of State is responsible for providing binding regulations and guidelines for voter registration. Ariz. Const. art. 5, § 1(A); A.R.S. § 16-142. The Secretary of State also issues the Arizona Election Procedures Manual (https://azsos.gov/sites/default/files/2021_EPM_October_1_Submission.pdf), which establishes voter registration procedures for all of Arizona's counties. A.R.S. § 16-452. The Manual is approved by the Governor and the Arizona Attorney General and carries the force of law. A.R.S. § 16-452(B). Katie Hobbs is sued in her official capacity.

15. Defendant Mark Brnovich, as Arizona's Attorney General, is the State's chief legal officer, A.R.S. § 41-192, and is authorized to approve voter registration procedures issued by the Secretary of State, A.R.S. § 16-452, and enforce Arizona's election laws in "any election for state office . . . through civil and criminal actions," A.R.S. § 16-1021. The Attorney General is responsible for enforcing HB 2492 when it goes into effect. Mark Brnovich is sued in his official capacity.

16. Defendants Dana Lewis, Gabriella Cázares-Kelly, and Stephen Richer are sued in their official capacities as Arizona County Recorders in the counties where the Tohono O'odham Nation and the Gila River Indian Community are located. They are independent chief election officers at the local level in the State of Arizona. In that

capacity, they are responsible for the implementation and enforcement of HB 2492 relating to the processing of the Physical Address Requirement, processing voter registration forms, rejecting a voter's registration form, and canceling a voter's registration.

**FACTUAL BACKGROUND**

17. The State of Arizona is home to twenty-two federally recognized Native American tribes and encompasses all or part of twenty Native American reservations. Altogether, those reservations cover more than nineteen million acres, which is more than one-quarter of all land in Arizona. Those reservations are home to approximately 162,000 individuals, including over 121,000 voting age citizens. *2020 Census State Redistricting Data (Pub. L. No. 94-171) Summary File Prepared by the U.S. Census Bureau, 2021 as published by Caliper Corporation*.

18. Homes on Native American reservations in Arizona are significantly more likely to lack a standard physical address, as compared to homes in non-Native areas. For example, one study found that approximately 86 percent of Arizona's non-Hispanic white voters outside of Pima and Maricopa counties have standard, mailable addresses, compared to only 18 percent of Native voters—a disparity of over 350 percent. Rodden, Ph.D., Jonathan, *Second expert Report in Ariz. Democratic Party, et al. v. Michelle Reagan, et al.*, Case No. 16-10650-PHX-DLR (amended Sept. 12, 2017).

*Current mechanism for specifying residence location*

19. Arizona law already requires voter registration applicants to provide their residence address or location. The purpose of that requirement is to allow election administrators to identify the precinct where voters live so they can be provided with the correct ballot.

20. To collect residence location information from registrants, the voter registration form created by the state of Arizona (the State Form) directs applicants to provide their residential address or, if the registrant does not have a street address, to "describe [the] location [of their residence] using mileage, cross streets, parcel #,

subdivision name/lot, or landmarks" and to "[d]raw a map and/or provide latitude/longitude or geocode in Box 23 if located in a rural area without a traditional street address." Ariz. Voter Reg. Form available online at: https://azsos.gov/sites/default/files/voter_registration_form.pdf.

21. Similarly, the voter registration form created by the federal Election Assistance Commission (EAC) (the Federal Form), directs registrants to provide their home address or, if the registrant does not have a street address, to "show where [they] live" using the map in Box C. Federal Voter Registration Form available online at: https://www.eac.gov/sites/default/files/eac_assets/1/6/Federal_Voter_Registration_ENG.pdf.

22. Due to the lack of addresses on reservation homes or to the unfamiliarity with Tribal addressing systems, many Arizona voters from Native American areas, including from Gila River and Tohono O'odham, register by drawing a map of the location of their residence and have done so without issue for years.

*Documentary proof of location of residence requirement in HB 2492*

23. Against the backdrop of the lack of addresses on Arizona reservations and a working system for identifying voters' location of residence, Arizona passed HB 2492, which makes documentation that proves the physical location of the applicant's residence a requirement of voter registration in Arizona.

24. Under the new law, the documents proscribed in A.R.S. § 16-579(A)(1) constitute satisfactory proof of location of residence. To meet the standards of A.R.S. § 16-579(A)(1), the individual must provide a government-issued photo ID that contains or is paired with another document that contains the ID holder's current physical address or, if photo ID isn't provided, the individual must provide two items or documents that contain their current physical address. In any case, all of the options proscribed in that section of statute require at least one document that contains the applicant's current physical address. A P.O. Box number will not qualify.

25. By the terms of the Physical Address Requirement, the required documentation "establishes proof of location of residence" and "constitutes confirmation of the address on the applicant's application at the time of registration." 022 Ariz. Legis. Serv. Ch. 99 (HB 2492), sec. 5 (codified at A.R.S. § 16-123).

26. While the voter registration form includes a field for applicants to provide a P.O. Box if that is where they receive mail, Arizona law does not allow applicants to provide a P.O. Box in the place of residence field. Arizona law specifies that applicants must provide their *residence address or location* on their application form. A.R.S. § 16-121.01.

*Tohono O'odham Nation*

27. Plaintiff Tohono O'odham Nation is located on the Tohono O'odham Indian Reservation in south-central Arizona along the Mexico border. Tohono O'odham lands, not including off-reservation trust lands, cover 2.8 million acres of rural desert territory. Approximately 10,000 people, including a voting age population of 6,713 individuals, live on Tohono O'odham lands, in 2,831 occupied housing units. *2020 Census State Redistricting Data (Pub. L. No. 94-171) Summary File Prepared by the U.S. Census Bureau, 2021 as published by Caliper Corporation*. The vast majority of those housing units do not have a physical address that would be capable of satisfying the DPOR requirement.

28. In Pima County, which includes the majority of the Tohono O'odham reservation, there are four Census block groups where a majority of the population are Native. *2020 Census State Redistricting Data (Pub. L. No. 94-171) Summary File Prepared by the U.S. Census Bureau, 2021 as published by Caliper Corporation*. In those areas, 6,418 people live in 1,848 occupied housing units. *Id*. Yet, according to County data, there are just *five* physical addresses in those four areas for a ratio of 0.003 physical addresses per occupied household in those areas. According to County data, the same ratio is 1.03 in white-majority areas, meaning households in white-majority areas of Pima County are *343 times more likely to have an address* than households in

Native-majority areas of the County. Pima County Development Services, *Pima County Geospatial Data Portal*, accessed in October 2022, available at; https://gisopendata.pima.gov/datasets/pima-county-official-address-points/explore?location=31.977155%2C-111.875000%2C9.57.

29. As a result, a significant majority of people living in Native areas of Pima County will be unable to participate in the election of their county, state legislative, and congressional representatives due to the DPOR requirement in HB 2492, while people living in white-majority areas will be largely unaffected.

30. Without physical addresses or postal routes in their community, most members of the Tohono O'odham Nation who reside on the Tohono O'odham Indian Reservation receive their mail delivery at post office boxes. Thus, the address reservation residents commonly use for identification purposes is the family P.O. Box number, which is not sufficient to satisfy the Physical Address Requirement in HB 2492.

31. Most members of the Tohono O'odham Nation who reside on the Tohono O'odham Indian Reservation do not have any documents that include both their name and an address corresponding with the physical location of their home. For these Tribal members, documents that typically might include such an address if they did have one—for example a lease, utility bill, bank statement, or vehicle registration—instead contain the family's P.O. Box number, list the name of another household member, or both. These documents thus do not satisfy the Physical Address requirement under HB 2492.

32. There is no process available for members of the Tohono O'odham Nation who reside on the Tohono O'odham Indian Reservation to obtain a physical address for their home on their own, preventing them from complying with the requirements under HB 2492.

*Gila River Indian Community*

33. The Gila River Indian Community is located on the Gila River Indian Reservation, which lies entirely within the state of Arizona, south of the city of Phoenix. Approximately 14,000 people, including a voting age population of 9,268 individuals, reside on the reservation in 3,516 occupied housing units. *2020 Census State Redistricting Data (Pub. L. No. 94-171) Summary File Prepared by the U.S. Census Bureau*, 2021 as published by Caliper Corporation.

34. A majority of Gila River Community members who live on the Gila River Indian Reservation do not have any identifying documents that include the physical address assigned to their home by the Community. Even for the minority of Community members who do have such documentation, it is unknown whether Community-assigned addresses will be accepted for the purpose of satisfying the Physical Address Requirement.

35. The U.S. Postal Service has informed the Community that, aside from a portion of the Community's District 4 that is directly adjacent to the off-reservation city of Chandler, home mail delivery will not be provided to the reservation. As a result of the lack of home mail delivery, most Gila River Community members who live on the Gila River Indian Reservation have a post office box which they use to send and receive mail. Commonly, the address Gila River residents use for identification purposes is their family P.O. Box number. These P.O. Boxes addresses do not satisfy the Physical Address requirement under HB 2492.

36. These Community members, which include individuals who will become eligible to register to vote after January 1, 2023, typically do not have any documents that include both their name and an indicator of the physical location of their home sufficient to satisfy the Physical Address requirement under HB 2492. For these Tribal members, documents that typically might include such an address if they did have one—for example a lease, utility bill, bank statement, or vehicle registration—instead typically contain the family's P.O. Box number, are in the name of another household

member, or both. These documents thus do not satisfy the Physical Address requirement under HB 2492.

37. The Community's Land Use, Planning, and Zoning Department (LUPZ) can provide a homeowner or lessee a document that identifies the address the Community has assigned to their housing. But LUPZ cannot provide similar documentation to other family members in the household who are not also listed as an owner or lessee.

38. In many cases, it would require Community members to navigate a lengthy and burdensome process involving multiple government offices for household members who are not listed as owners or lessees to obtain documentation of the address assigned to their home by the Community. First, the owner or lessee would have to get documentation of their home's Community-assigned address from LUPZ. Next, the other household members would have to apply for an Arizona ID using their family members' LUPZ document or visit another tribal department to obtain documentation that they reside with their family member who was able obtain documentation of their address from LUPZ.

39. Thus, even if it were clear that Community-assigned addresses are sufficient to satisfy the DPOR requirement—which it is not—many Community members would be unable to complete the burdensome process required to obtain identification documents containing that address sufficient to satisfy the DPOR requirement.

*Enactment of HB 2492's Physical Address Requirement*

40. During hearings on the legislation, witnesses testified that the law would prevent Native Americans who live in housing without a physical address from registering to vote. Retired Army Lieutenant Colonel Dana Almond testified that "proof of address deters those with nonstandard addresses such as [people from] Native American reservations." *Voter Registration; verification; citizenship: Hearing on H.B. 2492 Before the S. Jud. Comm.*, 55th Leg. 2nd Reg. Sess. (Ariz. 2022). The ACLU of

Arizona testified that "Native American voters without traditional addresses recognized by the postal service … would be forced to provide documentary proof of residence that they may not have or that may not even exist." *Id.* The Arizona Asian American Native Hawaiian and Pacific Islander for Equity ("AZ AANHPI for Equity") Nonprofit asked, "what does this bill mean for Native American tribes that do not have standard addresses?" *Id.* The bill sponsors and other legislators that voted yes on the bill ignored the warnings and passed the bill anyway.

41. None of the supporting legislators offered any rationale whatsoever for why the Physical Address Requirement is needed to meet their stated goals of preventing non-citizens from voting.

42. The Federal Form does not require documentary proof of where the registrant's home is located.

43. If the Physical Address Requirement is implemented, registrants who are not able to meet it have no other opportunity under the State's entire system to register to vote.

**CLAIMS FOR RELIEF**

**COUNT I**

**National Voter Registration Act Section 6, 52 U.S.C. § 20505**

**Failure to Accept and Use Federal Form**

**(On Behalf of All Plaintiffs and as to All Defendants)**

44. The National Voter Registration Act (NVRA) requires that states "accept and use the mail voter registration application form prescribed by the Election Assistance Commission pursuant to section 20508(a)(2) . . .for the registration of voters in elections for Federal office." 52 U.S.C. § 20505(a)(1).

45. In *Arizona v. Inter Tribal Council of Ariz., Inc.* 570 U.S. 1 (2013) ("*ITCA*"), the Supreme Court held that the NVRA preempted the application of a documentary proof of citizenship requirement passed by Arizona voters in 2004 as applied to registrations for federal elections submitted using the Federal Form.

46. After the *ITCA* ruling, the United State District Court for the District of Arizona ordered and declared that the NVRA "precludes Arizona from requiring a Federal Form applicant to submit information beyond that required by the [Federal] form itself." *Gonzalez v. Arizona*, 2013 WL 7767705, at *1 (D. Ariz. Sept. 11, 2013).

47. Currently, to specify the location of their residence, the Federal Form directs people that live in rural areas and that do not have a street address to show where they live by filling in a map at the bottom of the form. The Federal Form does not require further documentary proof of location of residence.

48. Despite that, under HB 2492, the DPOR requirement is explicitly applied to all Arizona registrations, including registrations for federal elections using the Federal Form.

49. The NVRA precludes Defendants from requiring Federal Form applicants to submit documentary proof of location of residence, as this is plainly not required by the Form itself.

50. The NVRA provides that "[a] person who is aggrieved by a violation of [the NVRA] may provide written notice of the violation to the chief election official of the State involved." 52 U.S.C. § 20510(b)(1). If the violation is not corrected within 90 days, or within 20 days if the violation occurred within 120 days before the date of a federal election, "the aggrieved person may bring a civil action . . . for declaratory or injunctive relief . . . ." *Id.* § 20510(b)(2).

51. Because the violations alleged herein occurred within 30 days before the date of an election for Federal office, pursuant to 52 U.S.C. § 20510(b)(3), Plaintiffs as the aggrieved parties do not need to provide notice to the chief election official of the State before bringing this civil action. *See, e.g., Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1044–45 (9th Cir. 2015) ("Neither the notice nor the complaint needs to specify that the violation has been actually observed, and that there is thus a 'discrete violation,' during the 120–day or 30–day period. It is enough that the notice

1 letter and the complaint plausibly allege the existence of an ongoing violation within
2 the appropriate time period, whether or not it was "discrete" during the period.").

3   52.   HB 2492 violates Section 6 of the NVRA.

4   53.   As a result, many members of Tohono O'odham and Gila River will be
5 unable to register to vote using the Federal Form as required by the NVRA.

### COUNT 2

### First and Fourteenth Amendments to the U.S. Constitution; 42 U.S.C. § 1983

### Severe and Unjustifiable Burden on the Right to Vote

### (On behalf of Plaintiff Tohono O'odham Nation and as to all Defendants)

54.   A court considering a federal constitutional challenge to a state election law must carefully balance the character and magnitude of the injury to the First and Fourth Amendment rights that the Plaintiffs seek to vindicate, against the justifications put forward by the state for the burdens imposed by the rule. *Burdick v. Takushi*, 504 U.S. 428, 434 (1992); *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983).

55.   "However slight th[e] burden may appear, … it must be justified by relevant and legitimate state interests sufficiently weighty to justify the limitation." *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 191 (2008) (Stevens, J., controlling op.) (quotation marks omitted).

56.   "Regulations imposing severe burdens on plaintiffs' rights must be narrowly tailored and advance a compelling state interest." *Angle v. Miller*, 673 F.3d 1122, 1132 (9th Cir. 2012) (quotation marks omitted). Even a minimal burden on the right to vote "require[s] an assessment of whether alternative methods would advance the proffered governmental interests," *Dudum v. Arntz*, 640 F.3d 1098, 1114 n.27 (9th Cir. 2011). *See also Soltysik v. Padilla*, 910 F.3d 438 (9th Cir. 2018) (quoting same).

57.   The documentary proof of residence requirement in HB 2492 imposes a severe, disparate, and/or unjustifiable burden on the fundamental right to vote of people of the thousands of voting age citizens in Arizona who live in housing without a

standard physical address. There is no state interest sufficient to justify this burden, as evidenced by the fact that Arizona has for years successfully implemented a voter registration program whereby voters with nonstandard addresses may describe and/or depict their location of residence in a way that fully facilitates all aspects of local election administration, including polling place precinct assignments

## PRAYER FOR RELIEF

Plaintiff Tohono O'odham Nation respectfully request that this Court enter judgement and an order granting the relief outline in paragraphs A through F below. Plaintiff Gila River Indian Community respectfully request that this Court enter judgment and an order granting the relief outline in paragraphs A, B, D, E, and F below:

A. Declare that the documentary proof of residence requirement in HB 2492 violates and is preempted by the NVRA for registration for federal elections submitted using the Federal Form;

B. Enjoin Defendants, along with their respective agents, officers, employees, and successors from enforcing the documentary proof of residence requirement as to applications for voter registration for federal elections submitted using the Federal Form;

C. Declare that the documentary proof of residence requirement in HB 2492 violates Plaintiffs' fundamental right to vote as guaranteed by the First and Fourteenth Amendments to the U.S. Constitution;

D. Enjoin Defendants, along with their respective agents, officers, employees, and successors from implementing or enforcing the documentary proof of residence requirement as to all applications for voter registration submitted using either the state or Federal Form;

E. Direct Defendants, under a court-approved plan, to take all appropriate measures necessary to remedy the harm caused by their noncompliance with the NVRA and for their violation of Plaintiffs' First and Fourteenth Amendment rights, including,

without limitation, ensuring that individuals affected by their noncompliance are provided remedial opportunities for voter registration;

  F.  Award Plaintiffs their costs, expenses, and reasonable attorney's fees, pursuant to 42 U.S.C. § 1988, 52 U.S.C. § 20510(c), and any other applicable law;

  G.  Grant such other and further relief as the Court deems just and proper.

  DATED this 7th day of November, 2022.

          OSBORN MALEDON, P.A.

         By  s/David B. Rosenbaum
            David B. Rosenbaum
            AZ No. 009819
            Joshua J. Messer
            AZ No. 035101
            2929 North Central Avenue, 21st Floor
            Phoenix, Arizona 85012-2793
            (602) 640-9000
            drosenbaum@omlaw.com
            jmesser@omlaw.com

         GILA RIVER INDIAN COMMUNITY
            Thomas L. Murphy
            AZ No. 022953
            Javier G. Ramos
            AZ No. 017442
            Post Office Box 97
            Sacaton, Arizona 85147
            (520) 562-9760
            thomas.murphy@gric.nsn.us
            javier.ramos@gric.nsn.us

         NATIVE AMERICAN RIGHTS FUND
            Allison A. Neswood*
            ND No. 49846
            neswood@narf.org
            Michael S. Carter
            AZ No. 028704, OK No. 31961
            carter@narf.org
            Matthew Campbell*
            NM No. 138207, CO No. 40808
            mcampbell@narf.org
            Jacqueline D. DeLeon
            CA No. 288192
            jdeleon@narf.org*
         NATIVE AMERICAN RIGHTS FUND
            1506 Broadway
            Boulder, CO 80301
            (303) 447-8760 (main)

Samantha B. Kelty
AZ No. 024110, TX No. 24085074
kelty@narf.org
Morgan E. Saunders*
NH No. 270646, DC No. 1686106
saunders@narf.org
NATIVE AMERICAN RIGHTS FUND
950 F Street NW, Suite 1050,
Washington, D.C. 20004
(202) 785-4166 (direct)

Ezra Rosenberg*
DC No. 360927, NJ No. 012671974
Jim Tucker**
AZ No. 019341
Ryan Snow*
DC No. 1619340
Lawyers' Committee for Civil Rights Under Law
1500 K Street NW, Suite 900
Washington, DC 20005
(202) 662-8600 (main)
erosenberg@lawyerscommittee.org
jtucker@lawyerscommittee.org
rsnow@lawyerscommittee.org

***Admitted in Arizona and Nevada only. Practice limited to matters before federal courts.*

Attorneys for Plaintiffs
*Pro Hac Vice Forthcoming*